246 So.2d 852 (1971)
258 La. 530
LOUISIANA & ARKANSAS RAILWAY COMPANY et al.
v.
James M. GOSLIN, Sheriff & Tax Collector.
No. 50859.
Supreme Court of Louisiana.
March 29, 1971.
Rehearing Denied May 3, 1971.
*853 Wilkinson, Woods, Carmody & Peatross, W. Scott Wilkinson, Shreveport, for plaintiffs-appellants.
Cook, Clark, Egan, Yancey & King, James E. Clark, Frank M. Cook, Shreveport, for defendant-intervenor-appellees.
Robert U. Goodman, Asst. Atty. Gen., for appellees.
McCALEB, Chief Justice.
Plaintiffs, Louisiana & Arkansas Railway Company, Kansas City Southern Railway Company and the Kansas City, Shreveport and Gulf Terminal Company, instituted this suit for reimbursement of specified amounts paid by them, respectively, under protest, to James M. Goslin, the Sheriff and ex-officio Tax Collector for the Parish of Caddo. The monies sued for are attributable to a two-mill ad valorem tax demanded and collected by the Tax Collector (for the year 1969) on behalf of the Red River Waterway District, a political subdivision of the State, which was created, and authorized to levy said tax, under the provisions of Article XIV, Section 30.5 of the Constitution of Louisiana (adopted November 3, 1964) and Act 17 of 1965 (R.S. 34:2301 et seq.).
The suit is based on the alleged illegality of the tax, there being six reasons set forth in the petition to sustain the claim of illegality.
The Collector filed an exception of no cause or right of action. Thereafter, the Red River Waterway Commission, the governing body of the District, intervened, joining the defendant in resisting the claims of plaintiffs and seeking a dismissal of the suit.
The exception was maintained by the trial court and plaintiffs are appealing from that ruling.
The constitutional and statutory provisions creating the District declare that the general purpose of the formation of the District, which embraces the seven parishes of Avoyelles, Caddo, Bossier, Red River, Grant, Natchitoches and Rapides, was to establish, operate and maintain, in cooperation with the federal government, a navigable waterway system extending from the confluence of the Red River with Old River and Atchafalaya River northwestward in the Red River Valley to the Louisiana State Boundary. To achieve the aims of the enactments, provision is made therein for the acquisition of land by the District for the construction and ownership of public docks, wharves, warehouses, et cetera, the dredging and maintaining of shipways, channels, slips and basin, the acquisition and construction of industrial plant buildings, and so onall indicating a general purpose to improve the usefulness of the Red River and ultimately furthering the economic development of the parishes included within the district. To establish and support these enterprises, the District is empowered to levy up to a two-mill tax, which tax is the one involved in this litigation.
The petition shows that all of the appellants own property in Caddo Parish. Additionally, the Louisiana & Arkansas Railway Company owns property in each of *854 the other six parishes comprising the District. It further declares that the Parishes of Winn, Catahoula and Concordia each bounds and fronts on the Red River and will receive the same potential benefits as those parishes placed in the District, but that the taxpayers in these three parishes will not bear their share of the tax burden required to produce said benefits because of their exclusion from the District.
One of the grounds urged for the nullity of the tax is that the elimination of the three said parishes (Winn, Concordia and Catahoula) from the District, although they receive the same benefits, will cause the entire burden of taxation for the establishment, operation and maintenance of the District to be borne by the other seven parishes, and that this results in an unfair discrimination against the taxpayers of those seven parishes denying to them the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States.
In disposing of this contention on the exception the district court observed:
"The area to be included in the District was determined by Constitutional Amendment (Art. 14, Sec. 30.5) and by act of the Legislature (Act 17 of 1965; R.S. 34:2301 et seq.). That determination is conclusive unless it was based on purely arbitrary action. Cheseboro vs. Los Angeles Co. Flood Control District, 306 U.S. 459, [59 S.Ct. 622], 83 L.Ed. 921; Mobile County vs. Kimball, 102 U. S. 691, 26 L.Ed. 238. In fact, a reasonable basis for the omission of the parishes of Winn, Catahoula, and Concordia from inclusion in the District may be ascertained by mere reference to the map of the State of Louisiana. Plaintiff has stated no cause of action on this ground."
There is little dispute as to the underlying legal principles herein. It is fundamental that: "The constitutional right to the equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights, as belong to, and to bear the same burdens as are imposed upon others in a like situation. Southern Railway Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247." Standard Oil Co. of Louisiana v. Police Jury, 140 La. 42, 72 So. 802. See also State v. Chisesi, 187 La. 675, 175 So. 453; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49; and City of Lake Charles v. Wallace, 247 La. 285, 170 So.2d 654. This protection is equally applicable to the taxing power of the State or its subdivisions. Shaw v. Watson, 151 La. 893, 92 So. 375; Matthews v. Conway, 179 La. 875, 155 So. 255; State v. Arthur Duvic's Sons, 185 La. 647, 170 So. 23; Arkansas Fuel Oil Corp. v. Fontenot, 225 La. 166, 72 So.2d 465; and City of Lake Charles v. Wallace, supra.
The constitutional restriction, however, does not operate so as to prevent a variety of classifications, or remove from the discretion of the State Legislature its right to provide a number of differences in the selection or classification of persons or property (geographical, or otherwise) so long as the discrimination is not invidious, unreasonable, or oppressive, but founded on just and equitable distinctions. In cases such as this one, where it is asserted that certain classifications or exemptions therefrom, are discriminatory and violative of the principles of "equal protection", the function of the courts is to determine whether the distinction is arbitrary or is based on practical and reasonable grounds with relation to the public purpose sought to be achieved by the legislation. Shaw v. Watson, supra; Matthews v. Conway, supra; State v. Arthur Duvic's Sons, supra; Ricks v. Department of State Civil Service, supra.[1]
*855 The question which arises in this case then is whether the legislation creating a particular geographical classification for special taxation purposes is reasonable or whether it is arbitrarily discriminatory.
As heretofore shown the case was decided on an exception of no cause of action which, for purposes of disposal admits the correctness of all well-pleaded facts. The petition sets forth that the property in the three excluded parishes which border and front on the Red River will receive the same benefits as petitioners' property which is located in the other parishes similarly situated with regard to the Red River. And it is alleged that the exemption of these three parishes from the District relieves the taxpayers therein from bearing their fair share of the tax burden assessed for the construction, operation and maintenance of the proposed project, notwithstanding that they, as aforesaid, receive the same benefits as the taxpayers in the other seven parishes.
If these facts are correct, and we must assume that they are in considering the exception, we agree with the plaintiffs that the exclusion of the three named parishes does constitute an arbitrary discrimination violative of the equal protection clause of the Federal Constitution, because if all of the parishes are similarly situated, as alleged, there is no reasonable basis for excluding any of them.
Unlike the district court, we cannot discern "a reasonable basis for the omission of the Parishes of Winn, Catahoula and Concordia from inclusion in the District", by mere reference to the "map of the State of Louisiana" presented to the court by the Collector and the District assuming, arguendo, that we can even consider the map.[2]
We note that the trial judge did not set forth in his opinion what it was about the map which enabled him to conclude that there was "a reasonable basis" for the exclusion of the three parishes. Indeed, we find, from our examination, the map bears out the allegation of plaintiffs that the three omitted parishes do have frontage on the Red River, although Winn has somewhat less than the others. However, we can perceive no differences from the map alone.
In their brief to this Court, defendants urge that there are topographical and economic differences in the areas omitted, giving this as one reason for their exclusion. But those are facts of which we cannot take judicial cognizance. They also point out that the large cities and parish seats of the included parishes are on, or are in close proximity to, the river, whereas those in the excluded parishes are further distant. But, here again, we cannot decide the validity of these arguments on the exception of no cause of action, which is to be determined by the well-pleaded allegations of the petition, because even by use of the undated map, we are unable to ascertain whether it represents correctly the presently existing population. Nor does the map itself indicate from where the population figures shown by the "Legend" were obtained. Besides, without some other explanatory evidence on the subject, it would be pure speculation to deduce that the location of a few of the larger cities on the river is pertinent to the reasonableness of the classification. But, assuming that the map correctly represents the district, it appears that only six or seven cities throughout all of the parishes have a population in excess of five thousand; and, by far, most of them are under *856 one thousand. The area which the river traverses, is, generally, sparsely populated.[3]
It would seem that the legislative purpose of the creation of the District was to promote industrial development of these sparsely populated areas.[4] Therefore, the location of the present cities would, of itself, be largely immaterial to the reasonableness of the classification.
Of course, there exists the presumption of constitutionality, that the legislature created the classification in good faith, and that any exclusions made therefrom were for valid reasons. From this it follows that the parties attacking the statute must bear the burden of proving the facts which would render it invalid. City of New Orleans v. Calamari, 150 La. 737, 738, 91 So. 172; and Hamilton v. McKeithen, 254 La. 683, 226 So.2d 494. But, as we have heretofore stated, we are of the opinion that the allegations of the petition do set forth a cause of action with respect to this asserted illegality, and that the petitioners should be permitted their day in court to establish, if they can, the validity of their claim that the classification constitutes an unfair discrimination in violation of the equal protection clause of the United States Constitution.
Having reached this conclusion it is unnecessary for us to pass on the other alleged irregularities in the levying of the tax. It is well settled that, if a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. United Mine Workers v. Arkansas Oak Flooring Co., 238 La. 108, 113 So.2d 899; Elliot v. Dupuy, 242 La. 173, 135 So.2d 54; Little v. Haik, 246 La. 121, 163 So.2d 558; and Burns v. Genovese, 254 La. 237, 223 So.2d 160.
For the reasons assigned the judgment appealed from is reversed, the exception of no cause of action is overruled and the case is remanded to the district court for further proceedings in accordance with law and consistent with the views herein expressed.
BARHAM, J., concurs.
TATE, J., dissents and joins in DIXON, J.'s, dissent.
DIXON, Justice (dissenting).
I respectfully dissent.
In attacking provisions of the Constitution of the State of Louisiana, the plaintiff railroads allege arbitrary discrimination because three parishes contiguous to the river are omitted from the taxing district. These conclusions are treated by the majority as factual allegations. I cannot glean from the pleadings facts from which I can conclude that the legislature was guilty of "flagrant abuse or purely arbitrary action, * * *" Chesebro v. Los Angeles County Flood Control District, 306 U.S. 459, 463, 59 S.Ct. 622, 624, 83 L.Ed. 921, 925 (1939). It is only well-pleaded facts which we accept as true on the trial of an exception, not well-pleaded conclusions of the pleader.
It seems to be conceded that if there is a reasonable basis for the exclusion of the three parishes from the district, then our *857 constitutional provision is not unconstitutional. Courts are not relegated to an evidentiary trial before they can take note of the existence of some facts. Among those matters of which judicial cognizance can be taken are the facts of geography (see R.S. 15:422). An atlas discloses that Winn Parish borders on the river for only a few miles. Catahoula and Concordia Parishes contain or are bounded by the Mississippi, Black and Ouachita Rivers, whose navigability we can notice. Concordia's boundary on Red River is swampy.
These facts which we can notice cannot be overcome by a trial, and they and they alone save the legislative action here involved from the stigma of "flagrant abuse or purely arbitrary action."
The judgment should be affirmed.
NOTES
[1] These principles have received uniform application in the federal courts as well as in other State jurisdictions. See 16 Am.Jur.2d 849, 859 and 863, verbo "Constitutional Law", Sections 488 and 496.
[2] The map is not, as asserted by the appellees, the official map of the State of Louisiana and does not purport to be. It is merely an undated map published by the Department of Highways for free distribution, apparently to be used primarily as a road guide.
[3] The Parish of Avoyelles has no city located on its river frontage. Others have only two or three.
[4] Actually, we cannot tell from the map alone whether the larger cities now have port facilities for effective river usage.