349 So.2d 349 (1977)
Wade O. MARTIN, Jr.
v.
The LOUISIANA STADIUM AND EXPOSITION DISTRICT et al.
No. 8494.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1977.
Rehearing Denied September 8, 1977.
*352 Sutterfield & Vickery, James R. Sutterfield, New Orleans, for plaintiff-appellant.
Dept. of Justice, William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, Donald Ensenat, Louis M. Jones, New Orleans, for defendants-appellees, Edwin W. Edwards, Governor, William J. Guste, Jr., Atty. Gen. and Charles E. Roemer, II, Commissioner of Administration.
Kronlage, Dittman & Caswell, Charles A. Kronlage, Jr., New Orleans, for defendants-appellees, The Louisiana Stadium and Exposition District, et al.
James R. Pertuit, New Orleans, for defendant-appellee, Building Engineering Services Co., Inc., Douglas, Nabonne & Wilkerson, Ronald P. Nabonne, Walter J. Wilkerson, New Orleans, Sobol & Trister, *353 Richard B. Sobol, Washington, D. C., for defendant-appellee, Superdome Services, Inc.
Before LEMMON, GULOTTA and BEER, JJ.
GULOTTA, Judge.
Plaintiff appeals from the dismissal of his suit for a declaratory judgment and an injunction in which he seeks to have declared invalid the contracts between the State, the Louisiana Stadium and Exposition District (LSED) and, respectively, Building Engineering Services Company, Inc. (BESCO) and Superdome Services Incorporated (SSI) and to enjoin LSED from making any further disbursements to BESCO and SSI under the terms of the contracts. We affirm.
A chronology of the constitutional amendments and legislative acts adopted in connection with the construction and operation of the Louisiana Superdome is helpful in the consideration of the issues raised in this appeal. In 1966, a constitutional amendment, LSA-Const.1921, Art. 14, § 47, was adopted to create LSED for the purpose of constructing and operating the Superdome. Pursuant to Paragraph (E) of this amendment, a lease and management and operation agreement between LSED and the State of Louisiana was signed on February 1, 1969, whereby the stadium was leased to the State, which in turn executed an agreement for the operation and management of the facility by LSED.
On May 10, 1974, an agreement was entered into between LSED and SSI for janitorial, ticket selling and taking, horticultural, field set-up and security work at the Superdome. On the same date, LSED also entered into an agreement with BESCO for the operation and maintenance of heating, air conditioning and ventilating equipment, plumbing fixtures, electrical equipment, fire protection systems, elevators and escalators and other mechanical equipment at the facility.
Subsequently, the question arose whether or not the agreements were in violation of LSA-R.S. 38:2211 requiring public work contracts exceeding the sum of $5,000.00 to be let out on public bids and also whether the agreements were in violation of LSA-R.S. 38:2217 which provides: "No contract shall be let on a cost-plus basis." Upon request, Attorney General's opinions addressed to these issues were rendered, stating in effect that the aforementioned statutes applied to LSED and that certain agreements were violative of these statutes.
In the wake of these opinions, the Louisiana Legislature adopted Act 651 of 1974 as a curative measure to validate these agreements. In Section 1. of this Act, reference is made to LSA-Const.1921, Art. 14, § 47(T) which authorizes the Legislature to "legislate in any manner and to any extent with regard to the Louisiana Stadium and Exposition District, its governing body and its powers, duties and functions, provided, however, no such changes or legislation shall impair the obligation of any contract or contracts theretofore entered into by the District". Act 651 further makes reference to the facts that LSED is a "body politic and corporate", that certain contracts were entered into between LSED and third parties relating to the operation of the Dome Stadium and that according to opinions rendered by the Attorney General those contracts were violative of the public bid act and of the prohibition in public work contracts against cost-plus agreements. Section 3. of the Act, in pertinent part, provides that the May 10 contracts between LSED and SSI and LSED and BESCO be "ratified, validated and confirmed and shall be deemed to bind the contracting parties, subject to the respective terms and conditions of the contracts".
The trial judge, in written reasons, in pertinent part, stated that BESCO and SSI "both were subject to public bid laws", but that "public bidding was accomplished with both of these contracts". The trial judge further concluded, however, that the SSI and BESCO contracts were "in fact cost plus contracts", but that Act 651 of 1974, which he determined to be constitutional, ratified, among others, the SSI and BESCO *354 contracts. Consistent with those reasons, the trial judge dismissed plaintiff's suit.
In this appeal, we are essentially confronted with three issues: 1) whether LSA-R.S. 38:2211[1] and LSA-R.S. 38:2217[2] apply to the SSI and BESCO contracts with LSED; 2) if these statutes are applicable, whether the contracts are violative of these two statutes; and, 3) whether Act 651 of 1974 validating the agreements is constitutional.

APPLICABILITY OF PUBLIC CONTRACT LAWS
It is LSED's contention that it is constitutionally exempt from compliance with the statutory provisions relating to public contracts. In support of its argument, LSED claims that LSA-Const.1921, Art. 14, § 47(C)[3] and (T)[4] accord to LSED the broad and all extensive authority until directed otherwise by the Legislature, to contract without compliance with the public contract laws. LSED further points out that Paragraph (C) of the constitutional amendment creating the Louisiana Stadium and Exposition District specifically subjects the District to the idle funds act and the Code of Ethics, but omits any requirement that LSED is subjected to the public contract laws. According to LSED this omission creates the implication that LSED is not subject to the public bid law and the law prohibiting cost-plus contracts. We do not agree.
As pointed out by plaintiff, the management and operating agreement between LSED and the State dated February 1, 1969, recites, in essence, that LSED shall comply with the Constitution and statutes of the State.[5] Furthermore, the constitutional amendment creating the Louisiana Stadium and Exposition District provides in Paragraph (A) that the District shall be a "body politic and corporate and political subdivision of the State of Louisiana *355 . . . ." The public bid laws are applicable to the State and all political subdivisions of the State. Nowhere in the constitutional amendment creating the District are any exceptions made to the application of the public bid laws or the prohibition against cost-plus contracts.[6] Indeed, by way of contrast, the constitutional amendment creating the District does exempt the State from compliance with the statutes relating to the leasing of the facilities. Paragraph (E) of the amendment provides that the State shall have the right to lease the facilities of the District without compliance with any other constitutional or statutory provisions relative to the leasing of public facilities. Paragraph (F) provides that the District, with the approval of the State Bond and Tax Board, is authorized to issue bonds "without reference to any other provisions of this Constitution or any laws enacted thereunder . . . ." Significantly, however, LSA-Const.1921, Art. 14, § 47 contains no language authorizing the District to contract without compliance with LSA-R.S. 38:2211 and 38:2217. It would have been a relatively simple matter to include such exceptions in the constitutional amendment. The fact that it contains no such express exceptions leads to a conclusion that LSA-R.S. 38:2211 (the public bid law) and 38:2217 (the cost-plus prohibition) are applicable to LSED. Apparently the Legislature, in its wisdom, arrived at the same conclusion, resulting in the adoption of Act 651 of 1974, the stated purpose of which was to cure the problem created regarding non-compliance with the public contract laws in the May 10 agreements.
The State or any of its political subdivisions in public work contracts is compelled to follow the public bidding laws unless exemption from compliance has been provided. The public bid law is founded on public policy. It has been enacted in the interest of tax-paying citizens and has for is purpose the protection of the public. See New Orleans Transfer Company, Inc. v. City of New Orleans, 284 So.2d 362 (La.App. 4th Cir. 1973); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943). The same rationale is applicable to the prohibition against cost-plus contracts.
In concluding that the public contract laws are applicable with regard to the SSI and BESCO agreements, we distinguish those cases relied upon by LSED. In Kliebert v. South Louisiana Port Commission, 182 So.2d 814 (La.App. 4th Cir. 1966), writ refused, 248 La. 1030, 183 So.2d 652 (1966), cited by defendants, the court held that the competitive bidding provisions of the Public Lease Law were not applicable to a lease negotiated between the South Louisiana Port Commission (which had been created by a self-operative constitutional amendment) and a private lessee. In so holding, however, the Kliebert court stated:
"* * * It would be an unwarranted restriction on the operation of the Commission to require it to submit an intricate agreement [the lease] of the type proposed here to the rigors of the competitive bidding statute. * * *" We are not convinced that the BESCO and SSI contracts deal with intricacies so complex as to necessitate the application of the rule established in Kliebert. We cannot conclude that contracts for the services provided by SSI and BESCO cannot be awarded through public bidding. Indeed, all parties concede that public bidding was accomplished *356 in the awarding of the BESCO contract. Further, in Act 651 of 1974, validating the agreements, the Legislature specifically stated in Section 4:
"* * * Furthermore, this Act is specifically intended and does hereby henceforth require full compliance of the Louisiana Stadium and Exposition District, or its governing authority, with all public bid and public contract laws of this state . . . ."
Obviously, the Legislature would not have made such a statement had it felt that the service contracts in question deal with subjects so specialized or intricate as to necessitate their being let without compliance with the public contract laws. Furthermore, the Legislature's statement in Section 4. that LSED is to comply with the public contract law is refutation of the argument that the constitutional amendment creating LSED authorizes the body, either expressly or implicitly, to negotiate contracts without regard to the public contract laws. We do not find that the holdings in Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752 (1948) and Herbert v. Police Jury of West Baton Rouge Parish, 200 So.2d 877 (La.App. 1st Cir. 1967), writ refused, 250 La. 1032, 201 So.2d 520 (1967), cited by LSED, compel us to reach a different conclusion. In Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971), also relied upon by LSED, the constitutional amendment provided the District with express authority to issue bonds "without reference to any other provisions of this Constitution or any laws enacted thereunder. . . ." On the contrary, in the instant case, the constitutional amendment creating the District does not contain any provision allowing LSED to contract without compliance with the public contract laws. The Abbott case is clearly distinguishable.
Accordingly, we are in agreement with the trial judge that LSED is subject to the public bid law, LSA-R.S. 38-2211, and the prohibition against cost-plus contracts, LSA-R.S. 38:2217.
WERE THE SSI AND BESCO CONTRACTS LET IN VIOLATION OF PUBLIC CONTRACT LAWS?
Plaintiff attacks the validity of the SSI contract on two grounds: 1) that it was negotiated and not let out for public bidding and is therefore violative of LSA-R.S. 38:2211; and, 2) that it is a cost-plus contract in contravention of LSA-R.S. 38:2217. On the other hand, plaintiff concedes that the BESCO contract was let in compliance with the public bid statute, but contends that the contract is a cost-plus agreement. We find no necessity to discuss whether the SSI contract was violative of LSA-R.S. 38:2211 because we find that both contracts are cost-plus agreements in violation of LSA-R.S. 38:2217 and, absent any curative legislation, are invalid.
Examination of the contracts supports this conclusion. The agreement between LSED and SSI provides in Article 3 that SSI is to be reimbursed by the State for all direct expenditures in connection with the SSI operation, for all salaries and wages of personnel engaged in the work to be performed, for costs of workmen's compensation and other required insurance, for payroll taxes, for salaries and wages of supervisory and office personnel, for general expenses and for various other enumerated costs. The State agrees to pay SSI a specified management fee as a percentage of SSI's costs. Similar provisions providing for reimbursement of costs and payment of a management fee as a percentage of the total costs are found in the BESCO agreement. Furthermore, in oral argument on appeal, counsel for SSI and BESCO do not seriously dispute that the agreements are cost-plus in nature. Accordingly, we have no problem in concluding that the agreements were violative of LSA-R.S. 38:2217.

CONSTITUTIONALITY OF ACT 651 OF 1974
As pointed out hereinabove, the purpose of Act 651 of 1974 is to validate the otherwise invalid SSI and BESCO contracts. Plaintiff contends, however, that this legislation is unconstitutional and therefore ineffective as a curative measure. His attack *357 on the constitutionality of the Act is multi-faceted.
Plaintiff's initial contentions are that the SSI and BESCO contracts are not subject to ratification under any circumstances. Though we are in agreement with plaintiff that cost-plus contracts are prohibited by law and are contrary to the public policy of the State, we disagree with plaintiff's contention that Act 651 is an unlawful ratification of unlawful contracts. Although the Act refers to "ratification" of the contracts, the agreements were not actually approved by the Commissioner of Administration until subsequent to the passage of the 1974 Act. The effect of Act 651 was to give approval to the purported agreements, and based upon this approval the contracts were then entered into between LSED and SSI and BESCO. While the contracts were prohibited cost-plus in nature, nevertheless, they did come into existence at the time that the Commissioner of Administration signed the contracts after approval had been granted in the legislative Act.
The public contract laws, LSA-R.S. 38:2211, et seq., and LSA-C.C. arts. 11 and 12, cited by plaintiff, are based on public policy, but nevertheless are creatures of the Legislature. Likewise, Act 651 is a legislative enactment and since this Act supercedes LSA-R.S. 38:2211 and other legislative acts, the Legislature has the authority to enact that legislation which amends or supplements prior legislation. If the prohibition against cost-plus contracts and the provisions requiring public bids were incorporated in the Constitution, a mere legislative act would not be sufficient to circumvent the constitutional provisions. A constitutional amendment would be required under the circumstances. Such is not the case in the instant matter. Act 651 of 1974 is legislation which takes a specific class of contracts out of the realm of prior legislation. Clearly, this right is reserved to any legislative body. See Hainkel v. Henry, 313 So.2d 577, 579 (La.1975); In Re Gulf Oxygen Welder's Supply Profit Sharing Plan and Trust Agreement, 297 So.2d 663, 665 (La.1974); and Russell v. McKeithen, 257 La. 225, 242 So.2d 229, 235 (1970).
Additionally, we point out that in the constitutional amendment creating LSED, the right is reserved to the Legislature to more fully "define the rights and obligations of the District or otherwise legislate in any manner and to any extent with regard to the Louisiana Stadium and Exposition District, its governing body and its powers, duties and functions . . . ." We interpret this provision in itself to reserve to the Legislature the right to enact any legislation, within its wisdom, it deems proper in connection with LSED. Provided no constitutional infirmities exist, we find no merit to plaintiff's contention that the Legislature could not enact legislation exempting LSED from compliance with public contract laws.
We likewise find no merit to plaintiff's argument that Act 651 grants to the Legislature the power to make contracts and is a usurpation of the executive power of the government and therefore a violation of the separation of powers articles of the Constitution. Neither the constitutional amendment creating LSED nor Act 651 of 1974 grants the Legislature power to enter into contracts. The constitutional amendment creates LSED for the construction and operation of the Stadium and confers upon this political subdivision the authority to enter into contracts subject to approval and further legislation by the Legislature. As stated hereinbefore, Act 651 of 1974 authorizes LSED to enter into the contracts under the terms and conditions set forth in the Act. In this connection, it was not until after the adoption of the Act that the agreements were accepted by Charles Roemer, Commissioner of the Division of Administration. Roemer's position is with the executive branch of government. Under the circumstances, we conclude that no infringement exists on the separation of powers by the enactment of Act 651 of 1974.
Plaintiff's most serious attack on the constitutionality of Act 651 is that it is a special law in contravention of LSA-Const. *358 1921, Art. 4, § 4[7] which provides, in pertinent part:
§ 4. Local or special laws; prohibited subjects
"Section 4. The Legislature shall not pass any local or special law on the following specified subjects:
* * * * * *
"Granting to any corporation, association, or individual any special or exclusive right, privilege or immunity.
* * * * * *
"Legalizing the unauthorized or invalid acts of any officer, servant, or agent of the State, or of any parish or municipality thereof."
Plaintiff contends that Act 651 is legislation passed for the benefit of privileged corporations, namely BESCO and SSI, and legalizes the unauthorized or invalid acts of LSED in making the agreements in contravention of the public contract laws. We reject this argument. Act 651 of 1974 is not special legislation in derogation of LSA-Const. 1921, Art. 4, § 4.
In Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179, 183 (La.1975), the Louisiana Supreme Court stated:
"General laws are those that operate equally and uniformly upon all persons brought within the relations and circumstances for which they provide or that operate equally upon all persons of a designated class founded upon a reasonable and proper classification. In contrast, a statute is special if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the class. In essence, a special law is one directed to secure some private advantage or advancement for the benefit of private persons. [footnote numbers deleted]"
In Section 1. of Act 651 the Legislature creates a class, i.e., service contracts for the operation of the Louisiana Superdome, the provisions of which are in contravention of LSA-R.S. 38:2211 and 38:2217. In Section 3. of Act 651 this class of contracts is more specifically defined as twelve enumerated contracts, including the SSI and BESCO agreements. We view this finite enumeration not as an exclusive list, but rather an illustrative enumeration of the members of the class defined in Section 1. of the Act. Presumably this list of twelve agreements, though not exclusive, is in reality a complete listing of the known agreements in existence at the time the legislation was adopted. No contention is made that other Superdome service agreements were in existence at the time of the adoption of the Act and were not listed. Nevertheless, all contracts with the characteristics of the class designated in the legislation are affected and, therefore, the Act is not special legislation prohibited by LSA-Const.1921, Art. 4, § 4.
Furthermore, the class established in the statute is "founded upon a reasonable and proper classification". As the Act states, the contracts in contravention of the public contract laws are to be validated because:
"* * * (7) . . . the completion of the stadium is placed in jeopardy by reason of the fact that to require the district to follow the contract laws of the state, with respect to the contracts herein to be ratified, would cause a substantial delay in completion and in placing the said facility into full operation; (8) to bid these projects and services at this time likely would be more costly than the contracts the district has already negotiated; (9) in order for the state to be able to receive revenues from this facility at the earliest possible date, to help defray the cost of the project, it is necessary that these contracts be validated, ratified and confirmed."
In view of the reasons underlying the passage of Act 651, we have no difficulty in concluding that the class created by the legislation is reasonable and proper. This is not to say, however, that we are in agreement with the wisdom of this legislation. Nevertheless, if the lawmaking body of this *359 State in its wisdom has seen fit to pass legislation which meets the test of reasonableness, we cannot interfere with the legislative will, provided that will is constitutionally exercised.
The Legislature, in attempting to bail a public body out of trouble, can only do what is constitutionally permissible. But the judiciary, in determining constitutionality of a legislative act, must consider not only the form of the act as measured against the literal constitutional provision, but also the substance of the act in the light of the surrounding circumstances, the reasons for passage and the purpose to be accomplished. Knapp v. Jefferson-Plaquemines Parish Drainage Dist., 224 La. 105, 68 So.2d 774 (1953); Sutherland, Statutes and Statutory Construction, § 40.02 (4th ed. 1973).
LSA-Const.1921, Art. 4, § 4 prohibits the Legislature from passing a special law on certain specified subjects, the pertinent one being a law granting a special right to a corporation or individual. The article is intended to prevent abuse of legislative power on behalf of special interests and to prohibit the exemption of an individual or private corporation from the operation of a general law; it was not intended to restrict the use of legislative power to further the State's interest. Thus, the constitution should not be inflexibly interpreted to prohibit the Legislature from passing a statute in an emergency situation to benefit a public body, even if several private corporations are incidentally[8] thereby benefited.
Since the record established that Act 651 was not passed to grant a special benefit to the private corporations, the legislation should be construed, within the reasonable meaning of LSA-Const.1921, Art. 4, § 4, not to be a prohibited special act.
This reasonableness of the classification is also dispositive of plaintiff's contention that Act 651 violates the equal protection provisions of the U.S. and State Constitutions.[9] As the Supreme Court stated in Louisiana & Arkansas Railway Company v. Goslin, 258 La. 530, 246 So.2d 852, 854 (1971):
"* * * It is fundamental that: `The constitutional right to the equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights, as belong to, and to bear the same burdens as are imposed upon others in a like situation. * * *'
"The constitutional restriction, however, does not operate so as to prevent a variety of classifications, or remove from the discretion of the State Legislature its right to provide a number of differences in the selection or classification of persons or property (geographical, or otherwise) so long as the discrimination is not invidious, unreasonable, or oppressive, but founded on just and equitable distinctions. In cases such as this one, where it is asserted that certain classifications or exemptions therefrom, are discriminatory and violative of the principles of `equal protection', the function of the courts is to determine whether the distinction is arbitrary or is based on practical and reasonable grounds with relation to the public purpose sought to be achieved by the legislation. * * *"
Clearly the distinction between the service contractors at the Superdome and other contractors in the State is not arbitrary in view of the emergency nature of the passage of Act 651 and the substantial delays and costs that would have been incurred in the absence of the curative legislation. Under the circumstances, we do not find Act 651 violative of the equal protection provisions of the U.S. and State Constitutions.
We also disagree with plaintiff's contention that Act 651 is without effect *360 because it does not have "a title indicative of its object" as required by LSA-Const. 1921, Art. 3, § 16.[10] The title to Act 651 provides in pertinent part that it is "An Act relative to the Louisiana Stadium and Exposition District . . . to ratify, validate and confirm certain contracts of the Louisiana Stadium and Exposition District . . ." We find no merit to plaintiff's contention that the failure to mention LSA-R.S. 38:2211 and 38:2217 in the title invalidates the provisions of the Act regarding the service contractors. The phrase in the title "to ratify, validate and confirm certain contracts" is indicative of the object of the legislation and no further specificity is required in the title.
Finally, we reject plaintiff's contention that the Act in effect uses public money for an unlawful purpose benefiting private individuals and therefore constitutes illegal taxation in violation of LSA-Const.1921, Art. 1, § 2[11] which forbids deprivation of rights of property without due process of law. We have previously concluded that the Act is not a special one benefiting private individuals, but is general legislation with the avowed purpose of benefiting the State. Plaintiff's argument in this regard, therefore, is without merit.
We conclude that although the public contract statutes are applicable to the Louisiana Stadium and Exposition District and the contracts with SSI and BESCO were violative of these statutes, nevertheless, the Legislature by Act 651 of 1974 effectively exempted the SSI and BESCO contracts from the public contract laws. Accordingly, the judgment dismissing plaintiff's suit is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 38:2211, in pertinent part, reads as follows:

§ 2211. Advertisement and letting to lowest responsible bidder
"A. (1) All public work exceeding the sum of five thousand dollars including both labor and materials to be done by the state of Louisiana, any public corporation or political subdivision of the state and all purchases of materials or supplies exceeding the sum of two thousand five hundred dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part. * * *"
[2] LSA-R.S. 38:2217 reads as follows:

§ 2217. Cost-plus contracts prohibited
"No contract shall be let on a cost-plus basis."
[3] LSA-Const.1921, Art. 14, § 47(C) reads as follows:

"* * * The District shall not be subject in any respect to the authority, control or supervision of any regulatory body of the State or any political subdivision thereof, but its books and records shall be subject to audit annually by the Legislative Auditor, its employees shall be listed on the central listing of State employees, and it shall invest its idle funds in accordance with the investment of idle funds act and it shall be subject to the provisions of the Code of Ethics."
[4] LSA-Const.1921, Art. 14, § 47(T) reads as follows:

"This amendment is to be regarded as self-sufficient and self-executing without any supplementary action on the part of the Legislature or any other State authority. The Legislature is nevertheless authorized to more fully define the rights and obligations of the District or otherwise legislate in any manner and to any extent with regard to the Louisiana Stadium and Exposition District, its governing body and its powers, duties and functions, provided, however, no such changes or legislation shall impair the obligation of any contract or contracts theretofore entered into by the District."
[5] Section 12. of the Management and Operating Agreement provides:

"Section 12. Compliance with State Laws.
"In carrying out this Agreement, the District shall comply with the Act and all other applicable laws. Nothing herein provided shall ever be interpreted or construed as permitting or authorizing the letting of any contracts for or the purchase of any supplies, materials and contractual services in violation of or contrary to any provisions of the Constitution and statutes of the State of Louisiana which may be applicable to such actions, it being the intent of this Agreement that all purchases and contracts be made strictly in compliance with applicable law on such subjects."
[6] See Arnold v. Board of Levee Commissioners of Orleans Levee District, 327 So.2d 495 (La.App. 4th Cir. 1976), application denied, 330 So.2d 318 (La.1976), wherein the Board argued that LSA-Const.1921, Art. 17, § 7(h) which granted the Board the power to lease certain lands likewise exempted it from compliance with LSA-R.S. 41:1211, the Public Lease Law. In holding that the Board was subject to the Public Lease Law, we stated at page 499:

"* * * A constitutional grant of power has as its source the sovereignty of the state, just as the revised statutes do, and in the absence of conflict between these enactments, both must be recognized. Thus, the Public Lease Law is inoperative only if the constitutional or statutory grant of power may be construed to expressly exempt the agency from its operation."
See also Upper Audubon Association v. Audubon Park Commission, 329 So.2d 206 (La.App. 4th Cir. 1976), writ denied, 333 So.2d 240 (La.1976).
[7] Carried over in substance as LSA-Const.1974, Art. 3, § 12.
[8] Parenthetically, we observe that the benefit to BESCO and SSI was substantial but, nevertheless, incidental in light of the overwhelming fiscal impact on the State and its citizens if the opening of the facility had been subjected to almost certain and extensive further delays.
[9] U.S.Const. Amend. 14, § 1; LSA-Const.1921, Art. 1, § 2; LSA-Const.1974, Art. 1, § 3.
[10] LSA-Const.1974, Art. 3, § 15.
[11] LSA-Const.1974, Art. 1, § 2.