377 So.2d 1206 (1979)
ACORN for Itself and its Members, Paul Cox, Steve Holt, Beulah Labostrie and Brenda Quant
v.
CITY OF NEW ORLEANS, Ernest Morial, Sidney Barthelemy, Joseph Giarrusso, Frank Friedler, Jim Singleton, Mike Early, Brod Bagert, Philip Ciaccio, Erroll Williams and Patrick Koloski.
Mrs. Rosemary BAYOLO, Wife of/and Joseph S. Greeck, Jr.
v.
Erroll WILLIAMS, Director of Finance of the City of New Orleans et al.
Mrs. Janet, Wife of/and Edwin H. HEATON et al.
v.
Erroll WILLIAMS, Director of Finance of the City of New Orleans et al.
JACKSON HOMESTEAD ASSOCIATION, Individually and on Behalf of Others Similarly Situated, and on Behalf of Certain of its Borrowers and South Pines, Inc., Individually and on Behalf of Others Similarly Situated
v.
Erroll WILLIAMS, Director of Finance of the City of New Orleans et al.
Nos. 66188 to 66191.
Supreme Court of Louisiana.
November 28, 1979.
Dissenting Opinions November 29, 30 and December 3, 1979.
Reasons for Judgment December 5, 1979.
Rehearings Denied January 11, 1980.
*1207 Salvador Anzelmo, Acting City Atty., Galen S. Brown, Deputy City Atty., Joseph Naccari, Jackson P. McNeely, Marc G. Shachat, Debra J. Fischman, Asst. City Attys., David A. Marcello, New Orleans, La., of counsel for defendant-appellant.
John F. Robbert, New Orleans, for New Orleans Coalition, Inc., et al., for intervenors-appellants.
Alvin R. Childress, III, New Orleans, for Daryl Claire Sins, wife of and intervenor plaintiffs-appellees.
Eugene G. Taggart, Monroe & Lemann, New Orleans, for Mrs. Rosemary Bayolo, wife of/and Joseph S. Geeck, Jr., et al., plaintiffs-appellees.
Arthur L. Ballin, Frank C. Dudenhefer, New Orleans, for Mrs. Janet, wife of/and Edwin H. Heaton, et al., plaintiffs-appellees.
Mrs. Norris S. L. Williams and Gregory C. Thomas, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for Jackson Homestead Assoc., et al., plaintiffs-appellees.
DIXON, Justice.[*]
In these consolidated cases the plaintiffs and some intervenors attack the constitutionality of Ordinance No. 7009, as amended by Ordinances Numbers 7110, 7280 and 7286 of the City of New Orleans. The district court found the ordinances unconstitutional, and the City appealed.
The ordinance levied a tax as follows:

*1208 "... except as hereinafter provided each owner of real property within the limits of the City of New Orleans shall pay, and there is hereby levied upon the owner thereof, an annual special real property service charge of One Hundred ($100.00) Dollars for each parcel of real property owned by him and separately listed and/or assessed on the tax rolls of the City of New Orleans for the year 1979 and for each year thereafter."
The trial judge held the ordinances unconstitutional and gave the following reasons from the bench:
"... I find that the total lack of relationship between the unit sought to be taxed and the tax imposed strikes the charge with Constitutional invalidity.
... a parcel of ground as described in the ordinance and as implemented or as created by the assessors is so utterly unequal in its application as to force the conclusion that the imposition of the tax violates the equal protection requirements of the State and Federal Constitutions, and I find the tax unequal and therefore invalid."
The parties stipulated that the proceeds of the "service charge" are deposited in the General Fund of the City of New Orleans.
The attack on the validity of the tax included several arguments, in addition to the argument that the tax is invidiously discriminatory in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution.
We find that the trial judge erred in holding that the ordinances violated the Fourteenth Amendment of the United States Constitution. The other arguments advanced by plaintiffs and some intervenors in attacking the legality of the ordinances do not convince us that the ordinances are invalid.
Because of the exigent circumstances involving the budgetary and fiscal matters of the City, we make this decision and decree, the written reasons for which will follow in due course.

DECREE
IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the Civil District Court of the Parish of Orleans declaring Ordinance No. 7009 M.C.S., as amended and reordained by Ordinance No. 7110 M.C.S., No. 7280 M.C.S. and No. 7286 M.C.S., unconstitutional is reversed, and there is now judgment in favor of the City of New Orleans and intervenors, The New Orleans Coalition, Inc., Julia Loftus and Thomas Niehaus, and against plaintiffs and intervenors, Daryl Claire Sins and Alvin R. Childress, rejecting the demands of plaintiffs and intervenors in these consolidated cases, all at the costs of plaintiffs and intervenors Sins and Childress.
SUMMERS, C. J., and BLANCHE, J., dissent for the reasons assigned.
LANDRY, J. Ad Hoc, concurs in part and dissents in part for reasons assigned.
SUMMERS, Chief Justice (dissenting).
In its decision today the Court casts aside a constitutional principle of property taxation as fundamental as any which has guided Louisiana's destiny since 1852. The principle this decision discards requires that taxation shall be equal and uniform throughout the territorial limits of the authority leveling the tax, and that all property shall be taxed in proportion to its value. La.Const. Art. 123 (1852); La.Const. Art. 124 (1864); La.Const. Art. 203 (1879); La. Const. Art. 225 (1898); La.Const. Art. 225 (1913); La.Const. Art. X, § 1(1921); La. Const. Art. XIV, § 16 (1974).
Today's decision does not fulfill this constitutional mandate. The City's ordinance levies a $100 charge on each owner of a "parcel" of property listed on the tax rolls of the City without regard to the value, use, size or location, whether tax exempt or not, and regardless of the assessed valuation of the property.
In doing so the ordinance relies upon Section 30 of Article VI of the Constitution of 1974 as its authority. This Section in general terms permits a political subdivision to exercise the power of taxation. What *1209 the Ordinance disregards, however, is the fact that this power of taxation is "subject to limitations elsewhere provided by this [same] constitution."
A vital cog in the City's contention is that the Constitution does not limit its authority to impose this property tax. The limitation, however, is implicit in the Constitution's provision for the manner and limits by which property taxes may be validly imposed. When the Constitution authorizes a tax on property and prescribes the conditions which must be met for its imposition those conditions are a restriction on the City's power to impose any other tax on property by any other means, except as set forth in the Constitution. Sharp v. Police Jury, 194 La. 220, 193 So. 594 (1940).
The surcharge imposed by the ordinance is undoubtedly a tax on property and the provision that it is payable by the owners of the property does not alter that fact. The United States Supreme Court affirms this result in Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638 (1921).
The millage rate of all taxes on property for general purposes are required by the Constitution to be approved by a majority of the electors voting in an election held for that purpose. La.Const. Art. 6, § 26(A). The City concedes that the surcharge imposed by the ordinance is for general purposes and it concedes, as it must, that this increase of the property taxes has not been submitted to the people for their approval in an election for that purpose. The charge the Ordinance purports to impose on property is moreover imposed in utter disregard of Section 23 of Article VII of the Constitution where the method to be employed in establishing the value of property upon which the assessment of the tax is based is set forth in detail.
In effect the property owners of the City have by this Ordinance been deprived of the laws enacted for their protection. The rationale of the majority in arriving at the decision it renders must necessarily permit the City, without approval of the people, to impose an unlimited "special" tax on the property within the City for "general purposes." All of this is contrary to the fundamental principle embodied in Louisiana's organic law since 1852: Other than those methods the Constitution permits, no taxation of property is allowed.
It is also my view that the charge the City imposes by this contested Ordinance violates the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Section 3 of Article I of Louisiana's Constitution.
By a levy of $100 on each "parcel" of property listed and/or assessed[1] on the tax rolls, without regard to the value, use, size or location, whether tax exempt or not, the humble cottage of the poor must bear the identical tax burden borne by the multimillion dollar skyscraper.
It has forever been a tenet of taxation in this Nation that its citizens are entitled to equal protection of its laws. The Constitutions of the United States and Louisiana guarantee this protection. Thus a taxpayer is protected from any governmental action which discriminates against him by subjecting his property to taxes not imposed on others in the same class or arbitrarily and irrationally imposed unequally among those in the same class. Bussie v. Long, 286 So.2d 689 (La.1973), writ denied Jan. 25, 1974.
A taxpayer under this protection is entitled to have his property taxed at the percentage of value applicable to others equally and similarly situated, even though statutory law may provide otherwise. In effect, a reasonable and rational equality and uniformity of taxation must be achieved to support the validity of the tax, otherwise the door to equal justice is closed and the opportunities for abuse are without restraint. Sioux City Bridge Co. v. Dakota County, Nebraska, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923).
*1210 While the City's position may be that the tax is modest and will impose no hardship, the record does not negative the conclusion that hardship will result. In any event the fact remains that the Constitution is violated.
I would affirm the decision of the trial court and require that the taxpayers who have paid the tax be reimbursed by the City the amounts paid with legal interest from date of payment.
BLANCHE, Justice (dissenting).
The nature of the tax should be determined by its incidence, and the tax here, in its true sense, is a property tax which effectively circumvents the concept of "ad valorem" property taxes to support general revenues. The constitutional safeguard of a vote by property owners with regard to the imposition of such a tax has been eroded and now, when the City of New Orleans desires additional revenue from property owners, it may be accomplished by the expediency of a mere majority vote in the city council. Next year, it may be decided that another $100 is needed and the next year, another $100, and the only check against this power of taxation is the point at which such taxes become confiscatory. Whatever that point may be will be left to the judgment of some court instead of the citizens who have to pay the tax.
I agree that the City of New Orleans under the provisions of its Home Rule Charter has the authority to tax its citizens within constitutional limitations; but the inequity, unfairness and grossly disproportionate differences created by this tax, in fact, treats its citizens unequally and denies them equal protection of law.
For these reasons, I respectfully dissent.
LANDRY, Justice Ad Hoc, concurring in part and dissenting in part.
I concur in the majority holding that the ordinance in question does not impose an ad valorem tax and that it does not violate the provisions of La.Const.1974, Article 6, Section 26(A) and Section 27(A) which limit the levy of ad valorem taxes. Because of the unique provisions of the home rule charter of the City of New Orleans, I also concur in the majority view that the ordinance is not ultra vires and does not contravene the provisions of La.Const.1974, Article 6, Section 30.
I dissent, however, from the majority holding that subject ordinance does not violate the equal protection clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Section 3, Louisiana Constitution, 1974.
While total equality is not required in tax matters, there must, nevertheless, be some rational basis for distinctions or inequalities included in or resulting from a tax levy.
As applied to tax laws, equal protection provisions of the United States and state constitutions permit classification of property. State legislatures have broad discretion in adopting such classes which need not be scientifically exact, provided they are not arbitrary, not intentionally discriminatory and are based on differences having a substantial and fair relation to the object of the legislation so that all persons similarly situated are treated alike. The tax need not operate equally throughout a taxing area or district, provided it is equal as to all persons within a particular district. Ohio Oil Company v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1930).
A tax levied by reason of ownership of property is a tax on the property itself. Dawson v. Kentucky Distillers Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638 (1921).
The City of New Orleans concedes that subject tax is imposed on parcels of land regardless of value, size or use and also irrespective of whether a parcel is improved or unimproved. A parcel is defined as "each parcel separately assessed on the tax rolls of the City of New Orleans". It is conceded also that the City of New Orleans relies on the local assessing authority, and accepts the designations of parcels made by the assessors. Whatever plots or combinations of plots of ground are assessed as a single parcel for tax purposes, is deemed a *1211 single parcel for the purpose of imposition of the tax at issue herein.
The record shows that pursuant to subject ordinance, the owner of a subdivision containing 100 lots assessed as one parcel, will pay a tax of $250.00 notwithstanding each lot will be subject to an assessment of $100.00 as the owner sells each unit of his subdivision.
It is also shown that a particular apartment complex containing 22 acres located on five city squares, on which are situated 794 rental units, and which is assessed at $10,000,000.00, is assessed as one parcel and will be taxed for $100.00 under the ordinance. At the same time, a single family residence, in the same subdivision, having an assessment of $75,000.00 will also be taxed $100.00. The testimony further reveals that a single family residence situated on two lots may be taxed $200.00 because each lot is assessed separately.
Additionally, it is shown that under the ordinance it is possible that an ownership of 30 separate parcels of land may be separately assessed as 30 separate parcels each of which would be taxed $100.00, or the same 30 parcels may be assessed as a single parcel taxed only for $100.00.
Based on these showings, I conclude that the tax burden thus imposed is so utterly disproportionate as to be completely devoid of a rational basis. In my judgment, the ordinance clearly promotes a totally indefensible inequity among owners of parcels of land.
I find no merit in Appellant's argument that the tax is fair and equitable because each owner of a single parcel is treated equally in that each is taxed the same amount. On the contrary, I find the tax arbitrary because it fails to create distinctions under circumstances where classification and differentiation is required to avoid an inequitable and unjust result. In my opinion, the equal protection clauses protect against inequality resulting from a failure to distinguish where such failure results in a totally disproportionate distribution of a tax burden.
I respectfully dissent in part.

REASONS FOR JUDGMENT
DIXON, Justice.[*]
In the course of this litigation, some issues raised in the attack on Ordinance No. 7009 M.C.S., as amended, have passed out of the case. Before us, the City admits that the tax is not a "service charge," despite that designation in the ordinance itself.
In brief and argument plaintiffs urge: (1) the City does not have the lawful authority to levy this tax; (2) the tax is illegal because it is not levied in proportion to the property taxed, because it circumvents the ad valorem scheme of property taxation of the 1974 Constitution, and because it violates the homestead exemption provisions of the Constitution; (3) the tax is violative of the United States Constitution and Article 1, § 3 of the Louisiana Constitution.

The City's Taxing Power
New Orleans is governed by a Home Rule Charter.
Article 6, § 4 of the Louisiana Constitution of 1974 continued in effect existing home rule charters as follows:
"Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. .."
Article 14, § 22 of the 1921 Constitution declared the City of New Orleans "to have a home rule charter consisting of Act 159 of 1912 as amended through the Regular Legislative Session of 1950, which said home rule charter may be amended or replaced only as hereinafter provided."
Act 338 of 1936 amended Act 159 of 1912, the City Charter of New Orleans, in relevant part in § 1(f):

*1212 "The City of New Orleans shall have the right to levy, impose and collect any and all kinds and classes of taxes or license fees that may be imposed that are necessary for the proper operation and maintenance of the municipality, provided same is not expressly prohibited by the Constitution of the State of Louisiana .."
It is clear therefore that the Constitution and the legislature, acting under that Constitution, have granted to the City of New Orleans full and complete power to impose all kinds and classes of taxes, provided only that they are "not expressly prohibited by the Constitution of the State of Louisiana."
No one has suggested that the tax involved in this case is expressly prohibited by the Constitution of this state.
Plaintiffs have argued that our case of Southern Pacific Transportation Co. v. Parish of Jefferson, 315 So.2d 619 (La.1975), limits, in some way, the power of the City to levy the tax.
That case is not applicable; it involved a different home rule charter, that of the Parish of Jefferson, which did not grant to the Parish of Jefferson the almost unlimited power to tax found in the New Orleans Home Rule Charter.
As this court stated in Mouledoux v. Maestri, 197 La. 525, 535, 2 So.2d 11, 14 (1941):
"We have no right to review the policy or wisdom of legislation because our jurisdiction is confined to determining the applicability, legality or constitutionality of laws. ..."
This court in the Mouledoux case recognized the plenary grant of taxing power to the City of New Orleans by the legislature, and approved one of the earliest city sales taxes in the United States, in spite of the fact that the state legislature in 1940 repealed the state sales tax enacted in 1938.

Conflict With Ad Valorem Provisions of Constitution
Plaintiffs contend the tax is illegal because it is not levied in proportion to the value of the property taxed; that it circumvents Article 6, § 26 of the Constitution by increasing the amount of taxes on the assessed valuation of real property; and that it violates the homestead exemption provisions of the Louisiana Constitution.
In the second Constitution of the State of Louisiana (Article 127 of the Constitution of 1845) is found this provision: "After the year 1848, all property on which taxes may be levied in this State shall be taxed in proportion to its value, to be ascertained as directed by law." The requirement that property "shall be taxed in proportion to its value" was repeated in five subsequent constitutions.[1]
Since 1921, however, there has been no constitutional requirement that property be taxed in proportion to its value.
Instead of the provision common in the Louisiana Constitutions since 1845, that taxation shall be "equal and uniform throughout the State" and that property "shall be taxed in proportion to its value," the Louisiana Constitution of 1921, in Article 10, § 1, provided that "... all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax ..." Instead of a property tax scheme purporting to be "equal and uniform," and at the same time "in proportion to its value," the Constitutional Convention of 1921 settled upon taxes which "shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax." Article 10, § 1, Louisiana Constitution of 1921.
"Equal and uniform" taxation had been subject to conflicting decisions and interpretations in the early 19th century; some of the interpretations could be reconciled with taxation "in proportion to its value" *1213 only with difficulty. 38 Ky.L.J. 31, 39 (1949-50). As the 20th century arrived, the classification of property (because of differing economic value and productivity) and its assessment or taxation at different rates became more and more attractive to taxing bodies in need of new sources of revenue.
The change in the constitutional rule of property taxation in Louisiana in 1921 apparently failed to excite observers. It was noted neither in the summary of the constitutional convention in Volume 15 of the American Political Science Review, page 565, nor in the Louisiana State Law Institute's Project of a Constitution, Volume 1, History, "The Constitution of 1921," pages 467, 486, by Alden L. Powell.
The provisions of Article 10, § 1 of the 1921 Constitution are "continued as statutes," and have now been repealed. Act 170 of 1975, § 1; Act 613 of 1978, § 1.
For over half a century there has been neither statutory nor constitutional requirement in Louisiana that taxes on property be levied in proportion to its value.
In the Constitution of 1974 property taxation is treated in Part II of Article 7. Section 18 concerns ad valorem taxes. Section 18 provides that property subject to ad valorem taxation shall be listed on the assessment rolls and that the assessment (percentage of fair market value) "shall be uniform throughout the state upon the same class of property." In Louisiana today, the same class of property must be assessed uniformly throughout the state for the purpose of taxation according to value. Other kinds of taxation are not constitutionally bound to a value basis.
One reason plaintiffs contend that this city tax on New Orleans property denies them the equal protection of laws under the federal and state constitutions, apparently, is that it would add an additional $100 tax on property only subject to a statewide ad valorem tax.
There is no substance to this argument. Louisiana, although empowered, no longer has a statewide ad valorem tax on real property. Act 3 of 1972; Article X-A of the Louisiana Constitution of 1921.
The tax involved here is not an ad valorem tax. Ad valorem means "according to value. Duties are either ad valorem or specific; the former when the duty is laid in the form of a percentage on the value of the property; the latter where it is imposed as a fixed sum on each article of a class without regard to its value. The term ad valorem tax is as well defined and fixed as any other used in political economy or legislation, and simply means a tax or duty upon the value of the article or thing subject to taxation." Black's Law Dictionary, 3d ed.
The tax under consideration here is clearly not levied according to the valuation of the property taxed; it is a specific tax, and not an ad valorem tax. It is not, therefore, a millage increase upon a parish ad valorem tax, and is not regulated by other provisions of law governing ad valorem taxation.
Plaintiffs argue that the additional tax on a parcel of land in New Orleans circumvents the provisions of Article 6, § 26 of the Constitution of 1974 by increasing the amount of taxes on property subject to ad valorem taxes. However, if the tax is not "expressly prohibited," it is not outside the taxing power of the City of New Orleans. See Mouledoux v. Maestri, supra. Likewise, there is no violation of the homestead exemption provisions of the Louisiana Constitution. Homestead exemption in Article 7, § 20 exempts certain property "from state, parish and special ad valorem taxes to the extent of three thousand dollars of the assessed valuation." The homestead exemption applies to nothing except ad valorem taxes.

Equal Protection
A discussion of plaintiffs' equal protection attack upon the ordinance must begin by determining exactly what constitutes, to plaintiffs' view, a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution and by Article 1, § 3 of the Louisiana Constitution. The salient characteristic *1214 of the ordinance, from an equal protection point of view, is that it establishes a burden, i. e. an owner's annual tax liability of $100, and allocates this burden only to each parcel of real property separately listed or assessed on the city's tax rolls. By so doing, the ordinance constructs a classification: from an undifferentiated mass of entities, it selects a group possessing certain specified traits and subjects those entities which are members of the group to treatment not afforded to other entities.
With regard to the process of classification itself we note, first, that it is by means of this activity, performed by all human languages and all human cultures, that social life achieves meaning, structure and regularity. That law-making bodies must exercise this function on behalf of society was recognized by the United States Supreme Court in Barbier v. Connolly, 113 U.S. 27, 31, 5 S.Ct. 357, 359-360, 28 L.Ed. 923, 925 (1885):
"`... neither the [Fourteenth] amendmentbroad and comprehensive as it isnor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to it wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits .. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good.'"
Subsequent developments in the analysis of legislative classifications in terms of the constitutional guarantee of equal protection have formulated the following principles:
1. Where a classification singles out for differential treatment members of a group "characterized by some unpopular trait or affiliation," New York City Transit Authority v. Beazer, 440 U.S. 568, 593, 99 S.Ct. 1355, 1369, 59 L.Ed.2d 587, 607 (1979), or members of a "discrete and insular minority," United States v. Carolene Products Co., 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed.2d 1234, 1242 (1938), judicial review of the constitutionality of the classification must employ strict scrutiny. Under this standard of review, the political body which has enacted the legislation creating the classification must prove that the legislation bears a necessary relationship to a compelling state interest. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).
2. Similarly, where the legislation creating the classification penalizes the exercise of a fundamental constitutional right, or creates a disparity in the availability of the opportunity to exercise such a right, strict scrutiny must be employed. Dunn v. Blumstein, supra.
3. In all other instances, the equal protection guarantee is not violated if the classification created by the legislation bears a rational relationship to a legitimate state purpose. As this court stated in Louisiana & Arkansas Ry. Co. v. Goslin, 258 La. 530, 536-537, 246 So.2d 852, 854 (1971):
"There is little dispute as to the underlying legal principles herein. It is fundamental that: `The constitutional right to the equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights, as belong to, and to bear the same burdens as are imposed upon others in a like situation. Southern Railway Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247.' . . .
The constitutional restriction, however, does not operate so as to prevent a variety of classifications, or remove from the discretion of the State Legislature its right to provide a number of differences *1215 in the selection or classification of persons or property (geographical, or otherwise) so long as the discrimination is not invidious, unreasonable, or oppressive, but founded on just and equitable distinctions. In cases such as this one, where it is asserted that certain classifications or exemptions therefrom, are discriminatory and violative of the principles of `equal protection', the function of the courts is to determine whether the distinction is arbitrary or is based on practical and reasonable grounds with relation to the public purpose sought to be achieved by the legislation. ..."
The minimum showing required under this test was described by the United States Supreme Court in Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480, 486 (1959):
"... Similarly, it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. ..."
Further, as this court noted in Louisiana & Arkansas Ry. Co. v. Goslin, supra, it is the burden of those attacking the classification to show that there is no conceivable legitimate state purpose:
"Of course, there exists the presumption of constitutionality, that the legislature created the classification in good faith, and that any exclusions made therefrom were for valid reasons. From this it follows that the parties attacking the statute must bear the burden of proving the facts which would render it invalid. .." 258 La. at 541, 246 So.2d at 856.
In Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970), the United States Supreme Court further stated that "[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by the laws are imperfect. If the classification has some `reasonable basis,' it does not offend the Constitution ..." And in specifically addressing the issue of legislative latitude in creating classifications for taxation purposes, the Court stated in Madden v. Kentucky, 309 U.S. 83, 87-88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940):
"... The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that `the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation,' and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."
In applying the Madden test, we cannot find that plaintiffs have carried their burden of negativing every conceivable basis which might support the City's decision to distinguish between parcels of real property and entities which are not parcels of real property, as a basis for allocating the burden of this tax. It is conceivable that the City might have determined, in attempting to provide a source of additional revenues to meet the ever-increasing demands upon its services to all its citizens, that parcels of real property are particularly easy to identify because of their current presence on the tax rolls, and that the ownership of such *1216 parcels is indicative both of some financial stability and of a long term dependency upon those city services which provide a benefit to the owners.
But it is doubtful whether plaintiffs have mounted their equal protection attack upon the ordinance on the basis of this fundamental classification into those entities which are parcels of real property and those entities which are not. Rather, it appears that their attack is directed to the nature of the class of "parcels of real property" itself, on the ground that the class includes some members of little dollar value, others of substantial value. It also appears that the district court's finding that the ordinance violates equal protection was based upon the same disparity among members of the class, for that court stated, in its reasons for judgment, that "... a parcel of ground as described in the ordinance and as implemented or as created by the assessors is so utterly unequal in its application as to force the conclusion that the imposition of the tax violates the equal protection requirements of the State and Federal Constitutions..."
In addressing this issue we must note, first, that to demand that the tax must differentially reflect differences in value is to insist that the tax must be what it is not; we have already determined that the ordinance creates a specific tax, not an ad valorem tax. Second, to allege constitutional infirmity because the class includes members of differing size, value, use, location and number of rental units, as plaintiffs do in brief, may be to assume, erroneously, that the reasonableness of a classification depends on whether the class is "natural" or is "unnatural" and "artificial." As one comment on equal protection requirements has noted, "[a]ll legislative classifications are artificial in the sense that they are artifacts, no matter what the defining traits may be ... The issue is not whether, in defining a class, the legislature has carved the universe at a natural joint... [Rather] [a] reasonable classification is one which includes all persons who are similarly situated with respect to the purpose of the law." Tussman and tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 348 (1949). (Emphasis added). If the purpose of the ordinance is to provide revenues for the City by taxing readily identifiable units, all parcels of real property separately listed and/or assessed on the City's tax rolls are similarly situated with respect to this purpose.
Plaintiffs cannot complain of inequalities in the administration of the tax, since the $100 charge is assessed against each parcel of property. Rather, the major thrust of their attack, and one for which we are not without sympathy, appears to be that the tax has a differential impact upon different types of property owners. For example, the owner of a small residence, of little market value, carries a relatively greater burden, with regard to the totality of his assets, than does the owner of a large, heavily exploited and highly valued commercial or rental property.
With regard to the question whether the differential impact of certain legislation violates equal protection, the United States Supreme Court recently stated, in Personnel Administrator of Mass. v. Feeney, ___ U.S. ____, ____, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870, 883 (1979):
"The Equal Protection Guarantee of the Fourteenth Amendment does not take from the States all power of classification. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, [2567,] 49 L.Ed.2d 520. Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern. New York Transit Authority v. Beazor, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587; Jefferson v. Hackney, 406 U.S. 535, 548, 92 S.Ct. 1724 [1732,] 32 L.Ed.2d 285. Cf. James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678. The calculus of effects, the manner in which a particular law reverberates *1217 in a society, is a legislative and not a judicial responsibility. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; San Antonio Bd. of Education v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. In assessing an equal protection challenge, a court is called upon only to measure the basic validity of the legislative classification. Barrett v. Indiana, 229 U.S. 26, 29-30, 33 S.Ct. 692 [693,] 57 L.Ed. 1050; Railway Express Co. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533. When some other independent right is not at stake, see, e. g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600, and when there is no `reason to infer antipathy.' Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171, it is presumed that `even improvident decisions will eventually be rectified by the democratic process. . .' Ibid."
On the basis of similar reasoning, in New York City Transit Authority v. Beazer, supra, the Court upheld a New York City Transit Authority regulation proscribing the employment of methadone users, despite the lower court's finding that a substantial proportion of the group thus barred from employment were capable of adequate job performance. The Court noted that "it is of no constitutional significance that the degree of rationality is not as great with respect to certain ill-defined subparts of the classification as it is with respect to the classification as a whole." 440 U.S. at 593, 99 S.Ct. at 1370, 59 L.Ed.2d at 607. Similarly in Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), the Court reversed a lower court and upheld a federal regulation which established a mandatory retirement age of sixty years for all Foreign Service personnel, but not for Civil Service personnel, even if stationed overseas. Appellants argued that the class created by the regulation was under-inclusive, in that Civil Service personnel similarly situated were not included, and over-inclusive in that some Foreign Service personnel over the age of sixty were not serving in overseas posts and/or were capable of performing their duties. The Court stated:
"Even if the classification involved here is to some extent both under- and over-inclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this `perfection is by no means required.' Phillips Chemical Co. v. Dumas School Dist., 361 U.S. 376, 385, 80 S.Ct. 474, 480, 4 L.Ed.2d 384 (1960); accord, San Antonio School Dist. v. Rodriquez, 411 U.S. 1, 51, 93 S.Ct. 1278, 1306, 36 L.Ed.2d 16 (1973). The provision `does not offend the Constitution simply because the classification "is not made with mathematical nicety ..."' Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911).
. . . . .
We accept such imperfection because it is in turn rationally related to the secondary objective of legislative convenience...." 440 U.S. at 108, 109, 99 S.Ct. at 948-949, 56 L.Ed.2d at 183.
And in Dandridge v. Williams, 397 U.S. at 485, 90 S.Ct. at 1161, 25 L.Ed.2d at 502, the Court upheld a provision of the Maryland system for providing aid to families with dependent children which established an absolute maximum amount applicable to all families, despite the fact that families with many children had substantially greater needs than families with few children. The Court noted that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations illogical, it may be, and unscientific."
In San Antonio School District v. Rodriquez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), Mexican-American parents challenged, as a denial of equal protection, a system under which 20% of the funds available to each public school district were provided by revenues from the taxation of property within that district. While the system operated uniformly on all Texas public schools, the district court found that schools in districts with lower property values received proportionately less funding *1218 than schools in high property value areas, and that this disparate effect was violative of equal protection. The United States Supreme Court reversed, finding that "where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages." 411 U.S. at 24, 93 S.Ct. at 1291, 36 L.Ed.2d at 37. The Court noted that no scheme of taxation yet devised is free of all discriminatory impact, and that the mere existence of some inequality in the manner in which the state's purpose is achieved is not a sufficient basis for striking down an entire system.
The ordinance before us creates a class of parcels of real estate which has a rational relationship to a legitimate government revenue raising purpose. Within the class, all parcels are taxed equally. While it may be true that the tax has a disproportionately greater impact upon property owners with fewer financial resources, we may not find that it violates the guarantee of equal protection on this basis. Any such inequity is for the citizens of New Orleans to correct, through the elective and legislative process.
For these reasons, we have reversed the judgment of the district court and entered our decree on the 28th day of November, 1979.
LANDRY, J. Ad Hoc, concurs in part and dissents in part for reasons assigned.
SUMMERS, C. J., and BLANCHE, J., dissent for reasons previously assigned.
NOTES
[*] Chief Judge Paul B. Landry, Retired, sitting by assignment as Associate Justice Ad Hoc in place of Watson, J.
[1] While all property is listed separately on these rolls, the rolls often do not assess a separate value to each parcel listed.
[*] Chief Judge Paul B. Landry, Retired, sitting by assignment as Associate Justice Ad Hoc in place of Watson, J.
[1] Article 123 of the Constitution of 1852.

Article 124 of the Constitution of 1864.
Article 203 of the Constitution of 1879.
Article 225 of the Constitution of 1898.
Article 225 of the Constitution of 1913.