Dear Mr. Craton:
You have asked for an opinion from this office regarding the right of the Mermentau River, Harbor Terminal District (District) to assess additional tonnage fees or other fees to businesses located within the territorial limits of the District, whether or not located on property owned by the District, to create a fund for the maintenance of a public road. The road is to be built with state and local funds and will be maintained by the District from the funds generated by the contemplated fees.
Specifically, you have asked four questions:
 1. Can the District assess tonnage fees to any business that uses the road and is located within the territorial limits of the District?
 2. If a business has one operation on property owned by the District and one operation on property not owned by the District, but both operations are within the territorial limits of the District, may the District charge tonnage fees to both operations?
 3. If fees are assessed, may the fees be based on tonnage traveling over the road or are they limited to tonnage at the port?
 4. Are there fees other than tonnage that can be assessed by the District to generate funds for the maintenance of the road?
LA. R.S. 34:3223 grants the Board the power to regulate the commerce and traffic of the district in "such manner as may in its judgement be best for the public interest." Our courts have held that a Harbor District is, for the most part, an administrative body created by the state for the efficient operation of harbor facilities and consequently the powers granted to the District are mainly administrative. See,Hamilton v. McKeithen, 226 So.2d 494 (La. 1969).
The District is granted the authority to acquire and manage property within the district limits and to levy charges for services rendered by the District in the course of carrying out its administrative functions. This political subdivision of the state was created by the legislature which also created the Board to direct, operate and govern the subdivision. The Board is granted broad powers to carry out its primary mission, which is to do any and all things necessary or proper for the government, regulation, development and control of the business of the district. This is certainly not limited to the activities within the immediate area of the harbor. The territorial limits of the District includes all of Ward 5 of Acadia Parish. An adjunct function is business inducement, which requires development of real estate within the District, including the construction of roads.
We have reviewed the cases and materials submitted with your initial request, most of which focus on the constitutional problem of local interference with interstate commerce. Of immediate concern is the limitation on local authorities to assess a tonnage fee, which is generally prohibited unless expressly authorized by Congress. Art. 10, Clause 3, United States Constitution (tonnage clause). As pointed out in NewOrleans Steamship Association v. Plaquemines Port, Harbor Terminal District, 874 F.2d 1018 (5th Cir. 1989),
the real test of whether a fee may be assessed by a local authority is its impact on interstate commerce, not whether there has been express permission granted by Congress. This is a commerce clause issue, which prevents a local governing authority from discriminating against interstate commerce to promote strictly local interests. The best analysis of the immediate facts is that in New Orleans Steamship Association (NOSA),supra. As was pointed out in that case, when the local government is charging a fee for service, it is participating in the marketplace and the commerce clause has no application. However, when the local government gets into regulating commerce, it falls within the prohibitions of the clause. In NOSA,
the Harbor District was assessing harbor fees to pay for fire and emergency protection services for the users of the port facility. The court concluded that the Harbor District was acting as both a market participant in providing the service and as a regulatory agency by carrying out a traditionally governmental function and requiring payment. In the case of the Mermentau Harbor District, the service contemplated is an improved road through the District. It is our opinion that this is not the kind of hybrid activity contemplated by NOSA, nor does it meet the test of Clyde Mallory Lines v. Alabama,296 U.S. 261, (1935). Building the road with public funds is a governmental responsibility, but the analogy ends there. The mere existence of the road after construction is not a marketplace activity being engaged in by the District to insulate it from the problems associated with interference with interstate commerce. The tonnage fee contemplated would be a regulatory fee assessed to businesses within the District. This is particularly true in this case since the road is being built with funds partially provided from sources other than the District.
The Clyde Mallory test has three parts. The first requires that the service being funded by the fee must enhance the safety and efficiency of interstate commerce. The District is interested in assessing a tonnage fee for goods that are transported to the port by use of the road and then shipped out at the port or shipped out on the Mermentau River. The road is viewed as an extension of the port facilities themselves. Use of the road will, eventually, necessitate repairs, which is the responsibility of the District. It is not unreasonable to argue that a good road, as opposed to a bad road, enhances the safety and efficiency of commerce within the District. The second test requires that the fee must be used to pay for the service. This has been pointed out in NOSA to be the market participant test. The service, as defined by the District, is the road. The fee will not be used to build the road, it will only help to continue its existence. There are other revenue sources available to the District to pay for road maintenance. If any of the contemplated fees were diverted from the road maintenance fund, the District would clearly violate this portion of the test. The third part requires that the fee, at most, place only a small burden on interstate commerce. Clearly, this contemplates some burden that is permissible. It is assumed that the fee the District is considering would meet this part of the test.
It is the opinion of this office that the assessment of a tonnage fee on businesses that use the road, whether they be on port property or not, would constitute an unreasonable interference with interstate commerce. It is clear that the District could not assess the fee to businesses on private property within the District who use the public road. See Attorney General Opinion No. 79-877 (October 18, 1979). This is strictly a regulatory fee, not a fee for service. More appropriately, the road is being constructed to induce more business growth within the District, not to improve the safety and efficiency of the harbor activities. In this sense, the road will assist in the growth of the tax base and development opportunities for the District which will, in turn, generate the additional funds needed to maintain the road.
The construction of the road at issue serves a worthwhile purpose. Current and future businesses in the District stand to benefit from this improvement. However, LA. R.S. 34:3228 must be read in conjunction with the broader language of R.S. 34:3223. Subsection (B) of Section 3228 provides that the ad valorem tax on property subject to taxation in the district "may be used to defray the . . . maintenance expenses of the board." Additionally, at Subsection (C), if the ad valorem tax of Subsection (A) is not sufficient, the board may levy a "special" ad valorem tax "for the purpose of obtaining funds for the maintenance . . . of the facilities of the district." Subsection (E) of the statute permits the board to borrow money from time to time to defray "maintenance expenses of the board." The board also has the right to issue bonds to generate funds for any lawful purpose, which would certainly include maintenance of a road located within the District. The only fees contemplated by Section 3228 are those related to vessels utilizing the facilities of the District. There is no mention of fees for use of roads within the District. There are no Attorney General Opinions on this issue and no case law that we are aware of that specifically addresses this contemplated fee.
The above addresses the third question regarding the rational relationship of the tonnage fees to vessels using the District's facilities as opposed to tonnage traveling over the road. The statute is directed to vessels, not trucks. Nothing in the law prohibits an increase in the tonnage fees assessed to the vessels if that increase is for reasonable purposes, including maintenance of the infrastructure of the District. This is consistent with the holding of NOSA, supra. There is no rational way to apportion the fee contemplated by your request to the various business and non-business users of the road short of a flat toll, which is not expressly provided for by law. This is a public road and the businesses in the District, whether on port or private property, have the same rights. To charge one and not the other for the use of the road presents serious constitutional problems.
Your final question cannot be answered with any specificity. You wanted to know if there was any other way to generate revenue to pay for the maintenance of the road after it is constructed, if the user fee or tonnage fee is not workable and there is no toll. Other than to say that the ad valorem and special ad valorem taxes can be utilized along with stipulated borrowing and bond funding, this office cannot advise you specifically about other means of raising money.
We hope this is responsive to your inquiry, however should you have any further questions, please do not hesitate to contact the undersigned at your convenience.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ Robert B. Barbor Assistant Attorney General
RPI/RBB/tp